AMBOY NATIONAL BANK, Plaintiff,

v.

GENERALI—U.S. BRANCH a/k/a the General Insurance Co. of Trieste and Venice and Citibank, N.A., Defendants.

CITIBANK, N.A., Third–Party Plaintiff,

v.

MIDLANTIC BANK, N.A., William Somers, Jr. and Somers Associates, Third–Party Defendants.

MIDLANTIC BANK, N.A., Fourth–Party Plaintiff,

v.

William SOMERS, Jr., Somers Associates, Inc., and the Resolution Trust Corp., as Receiver for the Hansen Savings Bank, SLA, and Collective Bank, Fourth–Party Defendants.

The RESOLUTION TRUST CORP., Third–Party Plaintiff,

v.

William SOMERS, Jr., and Somers Associates, Inc., Third–Party Defendants.

GENERALI—U.S. BRANCH, Fifth–Party Plaintiff,

v.

William SOMERS, Jr., and Somers Associates, Inc., Fifth–Party Defendants.

William SOMERS, Jr., Fifth–Party Plaintiff,

v.

George SHARPF, Olive Bray, George Brennan, Joseph Disepio, Jonathan Heilbrunn, Frank Kurzawa, Robert O'Donnell, Melvin Safran, Estate of Ernest Sharpf, Harold Smith, Carmen Yacuzzio and John Doe(s), Fictitious Name(s), Fifth–Party Defendants.

Civ. No. 95–1784 (WHW).

United States District Court, D. New Jersey.

June 27, 1996.

Gary Trachten, Kudman, Trachten & Kessler, New York City, for Plaintiff Amboy.

William A. Somers, South River, N.J., Third, Fourth and Fifth Party Defendant, and Fifth–Party Plaintiff, pro se.

Jeanette Hoffman, Engleman & Hoffman, Keyport, N.J., for Third, Fourth and Fifth Party Defendant, and Fifth–Party Plaintiff Somers Associates, Inc.

Ronald T. Michioka, Lester Schwab Katz & Dwyer, Millburn, N.J., for Defendant and Fifth–Party Plaintiff Generali—U.S. Branch s/h/a "Generali—U.S. Branch a/k/a The General Insurance Company of Trieste & Venice."

Daniel J. Zirrith, Wong, Tsai & Fleming, Edison, N.J., for Fourth–Party Defendants and Third–Party Plaintiffs Federal Deposit Insurance Corporation, as successor in interest to, Resolution Trust Corporation, as Receiver for Hansen Savings Bank, SLA and Collective Bank.

Michael L. Slonim, Zeichner Ellman & Krause, Hackensack, N.J., for Defendant and Third–Party Plaintiff Citibank, N.A.

John A. Nocera, Ann M. LaCarrubba, Princeton, N.J., for Third–Party Defendant and Fourth–Party Plaintiff Midlantic National Bank.

WALLS, District Judge.

This matter comes before the Court on the motion for summary judgment of fourth and fifth-party defendants and fifth-party plaintiffs William A. Somers' ("Somers") and Somers Associates, Inc.'s ("Somers Associates") against plaintiff Amboy National Bank ("Amboy"); on Amboy's cross-motion for summary judgment against Somers; on third-party defendant and fourth-party plaintiff Midlantic Bank, N.A.'s ("Midlantic") motion for summary judgment against Amboy and against defendant and third-party plaintiff Citibank, N.A. ("Citibank"); on defendant and third-party plaintiff Citibank, N.A.'s motion for summary judgment against Amboy; on fourth-party defendants and third-party plaintiffs Federal Deposit Insurance Corporation's ("FDIC"), as successor in interest to, Resolution Trust Corporation, as Receiver for Hansen Savings Bank, SLA and Collective Bank's ("Collective") motion for summary judgment against Amboy; and on defendant and fifth-party plaintiff Generali's— U.S. Branch s/h/a "Generali—U.S. Branch a/k/a The General Insurance Company of Trieste & Venice" ("Generali") motion to dismiss Amboy's complaint.

All of these motions can be easily distilled to their essence. Amboy has sued Generali and Citibank. Citibank impleaded Midlantic, which impleaded in turn Somers, Somers Associates and the RTC (now the FDIC). RTC then sued Somers and Somers Associates. Also, Generali impleaded Somers and Somers Associates. Hence, there are only two motions at issue: the first is the one for summary judgment to dismiss Amboy's complaint against Generali and Citibank. All non-Amboy parties, being potentially liable only to the extent that Amboy's complaint is viable, have moved for dismissal against Amboy on essentially the same grounds. And the other distinct motion is Amboy's, which seeks dismissal of Somers action against it.

### FACTS

The basic facts are simple. Allegedly, Somers forged a check, and now the assignee (Amboy) of the payee (Sun Life Assurance Company of Canada ("Sun Life")) whose signature was forged, is suing the insurance

company that issued the check (Generali), the bank where the check was deposited (now the FDIC), the bank that initially indorsed the check (Midlantic), and the bank (Citibank) upon whom the check was drawn.

Here is the context of this dispute: Somers was a general partner of Pine Run Limited, a limited partnership that owned Section III of the Village of Pine Run Apartments; his corporation, Somers Associates, Inc., managed and operated the property pursuant to a management agreement. Sun Life held a first mortgage on that property while Amboy possessed a subordinate mortgage. Generali issued an insurance policy against damage from fire to the property. The policy provided that payments in settlement of any claim under the policy would be made payable to both mortgagees, Sun Life and Amboy.

The property sustained fire damage. Somers Associates submitted a claim to Generali for the fire loss, which was adjusted for the amount of $282,025.00: Generali agreeing to pay $237,542.00 forthwith and $39,483.00 to be held in reserve and paid upon the completion of repairs.

Although the declaration of the insurance policy named Pine Rune LTD as the named insurer for the property, Generali issued an April 5, 1990 check on the loss, for $237,-540.00, drawn on Citibank, to the order of: "Somers Associates, Inc, as insured; Sun Life Assurance Co of Canada c/o Meritor Mortgage Corp. as First Mortgagee." Although the check was paid on the apparent written endorsement of both payees on the back of the check, Sun Life had neither endorsed nor authorized any endorsement to the check.

In the aftermath of the forgery, numerous suits, including several between Amboy and Somers, were commenced. On April 22, 1992, Amboy and Somers entered into a global settlement agreement providing for cross-releases between the two parties, including all of the many entities under which Somers operated, or he directly or indirectly con-

trolled, or to which liability might be imputed based upon his conduct ("Somers Entities"). In accordance with the settlement agreement, Amboy took immediate control of the property as mortgagee in possession. The Somers Entities agreed not to contest Amboy's foreclosure actions. Under the consent agreement, Amboy would have no recourse against any Somers Entity for any deficiency. On November 4, 1992, Amboy was awarded a judgment of foreclosure on the property in the amount of $2,370,664.95.

Amboy subsequently began this suit, in New Jersey Superior Court, Middlesex County, in February 1993,[1] against Generali, Sun Life, and others, and had sought, as an alternative to a judgment against Generali for the insurance proceeds, a declaration that the check be deemed paid to Sun Life, thereby reducing the amount of Sun Life's superior lien.

Amboy and Sun Life entered into an agreement whereby Amboy paid to Sun Life the full amount of principal and interest due on Sun Life's mortgages on the property, and released and held harmless Sun Life from any and all claims relating to the fire insurance proceeds.[2] In return, Sun Life assigned its rights, title and interest in and to the mortgage to Amboy. According to Amboy, the parties intended that the assignment would permit Amboy to subrogate to and assume Sun Life's interest in the insurance proceeds. However, to clarify their intention, the parties executed on December 15, 1995 an assignment document stating that as of December 21, 1993, the parties had intended such claims to transfer by assignment.

At the sheriff's sale on Amboy's foreclosure of the second mortgage, Amboy tendered a successful bid of $100 for the property. It subsequently transferred the bid to Blackwood, L.L.C. ("Blackwood"), an entity affiliated with Amboy. By deed of April 22, 1994, and the property was transferred by the sheriff to Blackwood by deed dated April 22, 1994.

---

1. Without addressing the procedural history at length, the Court simply notes that, eventually, this case was removed to this Court.

2. Amboy paid to Sun Life for the mortgage and attendant rights $928,669.85. The mortgage principal was $889,838.00.

Somers and Somers Associates now move for summary judgment against Amboy seeking dismissal of its complaint against Generali and Citibank. The FDIC, Midlantic, Citibank and Generali have either filed their own, similar motions, or have joined in Somers motion. Amboy cross-moves against Somers seeking the dismissal of his counterclaim against it.

## DISCUSSION

### SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant must show that if the evidence submitted were reduced to evidence admissible in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Building Co. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3rd Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

■ At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, rather, it is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986). In doing so, the Court must construe the facts and inferences in a light most favorable to the non-moving party.

### I. The Motions for Summary Judgment Against Amboy

■ Somers, Somers Associates, FDIC, Citibank, Generali and Midlantic move for summary judgment[3] on the grounds that (1) the *Whitestone* doctrine prohibits Amboy from recovering the proceeds from the forged check as assignee of the first mortgagee; (2) the *Whitestone* doctrine prohibits Amboy from recovering the proceeds from the forged check as the second mortgagee; and (3) the settlement agreement between Somers and Amboy precludes Amboy claims. Generali also contends that Amboy may not bring suit because it (1) has waived its claims, or is estopped, or (2) is barred by laches from doing so.

### 1. The Whitestone Doctrine[4]

### A. Amboy as assignee of first mortgagee

■ In *Whitestone Savings and Loan Assoc. v. Allstate Ins. Co.*, 28 N.Y.2d 332, 336, 321 N.Y.S.2d 862, 270 N.E.2d 694 (1971), the issue was "whether a mortgagee who bid in the full amount of the secured debt at the foreclosure sale in order to obtain the mortgaged property, retains any insurable interest entitling it to sue on a fire insurance policy under a mortgagee loss payable clause." *Id.* at 333, 321 N.Y.S.2d 862, 270 N.E.2d 694. The New York Court of Appeals first approvingly acknowledged the proposition that "[b]ecause a mortgagee is entitled to one satisfaction of his debt and no more, the bidding in of the debt to purchase the mortgaged property, thus cutting off other lower bidders, has always constituted satisfaction of the debt." *Id.* at 335, 321 N.Y.S.2d 862, 270 N.E.2d 694. Thus, when a mortgagee is named as the loss payee of a

---

3. Somers, and various other defendants, have styled their motions as motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). However, as various documents have been submitted to the Court in connection with these motions, and because these documents have been considered, the Court will analyze these motions as requests for summary judgment under Fed.R.Civ.P. 56.

4. The Court will address the applicability of the *Whitestone* doctrine to Amboy as both assignee of the first mortgagee and as second mortgagee in this section.

fire insurance policy, a fire occurs, and thereafter the mortgagee forecloses and receives the full amount of the mortgage, the mortgagee is not entitled to the proceeds of the insurance policy. *Id.* at 335–37, 321 N.Y.S.2d 862, 270 N.E.2d 694. The Court of Appeals explained:

> Perhaps the best example of how a mortgagee could lose his right to recover under the mortgagee loss payable clause would be assignment of the mortgage, and indeed for whatever consideration, after the fire loss. Obviously, the fixing of rights at the time of the loss does not extend to such a post-loss event. The satisfaction of the mortgage debt by the bidding in of the debt at the foreclosure sale is functionally equivalent. In either event the mortgagee has terminated his insurable interest.

*Id.* at 335, 321 N.Y.S.2d 862, 270 N.E.2d 694.

■ The argument advanced by the various non-Amboy parties is that the *Whitestone* rule governs this dispute, and its application bars recovery on the policy by Amboy as the assignee of the first mortgagee.[5] Amboy argues that the rule is inapplicable because it took an assignment of the first mortgage and is entitled to the insurance proceeds as Sun Life would have been pre-assignment.

*Whitestone* was essentially adopted by the New Jersey Supreme Court in *495 Corp. v. New Jersey Ins. Underwriting Assoc.*, 86 N.J. 159, 167–68, 430 A.2d 203 (1981). There, however, the New Jersey Supreme Court held the doctrine inapplicable when the mortgage was acquired by transfer before the fire occurred. Neither *495 Corp.*,

nor any other New Jersey cases has considered the issue here: whether an assignment of a mortgage after a fire extinguishes the right of the assignee to insurance proceeds?[6]

The "assignment" portion of *Whitestone* can be read two ways. One manner, urged by the movants, is that when a mortgagee is entitled to insurance proceeds as a property loss payee and assigns its mortgage after a fire, the assignee loses its right to collect on the policy. The other reading is that the assignor, of course, loses its interest in the insurance proceeds, but the assignee's rights thereto are unaffected. This Court believes that the *Whitestone* court intended the former to become law, but finds, as discussed below, that proposition to be in conflict with long-established commercial practice and law.

The principal rationale of *Whitestone* is that because a mortgagee who successfully forecloses upon the property after the occurrence of a loss which triggers an insurance policy in which it is a payee has obtained satisfaction of its debt, it no longer has any rights to the proceeds of the policy. If the mortgagee received a surplus from the foreclosure, the excess would go to the mortgagor; if there were a deficiency, it could proceed against the mortgagor. In either case, the mortgagee would still not be permitted to receive the insurance proceeds because then it would receive a windfall.

■ Yet *Whitestone* adds, by the dictum, that an assignment of the mortgage after the loss event operates like a foreclosure and extinguishes the mortgagee's right to any

---

**5.** The movants also contest the propriety of the assignment. Specifically, they have presented a letter written by David Rudd, an attorney for Amboy, concerning the assignment of the first mortgage from Sun Life. That letter explains Amboy's rationale for structuring the transfer of the first mortgage as an assignment, and makes reference to the settlement agreement Amboy had consummated with Somers. Unlike the movants, this Court does not view it as proof that Amboy engaged in a sinister transaction with Sun Life to skirt the settlement agreement in order to obtain the proceeds from the insurance check. But the Court need not make a finding as to the implications of this letter. On this summary judgment motion, all inferences must be made in favor of Amboy, the non-moving party.

At worst, there is an issue of fact with regard to the propriety of the assignment because of the letter. But this Court could not, on the basis of the letter, hold that there is no material issue of fact and that the movants are entitled to judgment as a matter of law because the assignment was improper. To the extent that the movants have advanced this argument, their motion is denied.

**6.** That the assignment portion of *Whitestone* was merely dictum is confirmed by Judge Scileppi: "[W]e do not have before us a question of waiver, estoppel or assignment." *Whitestone*, 28 N.Y.2d at 339, 321 N.Y.S.2d 862, 270 N.E.2d 694 (Scileppi, J. dissenting).

insurance proceeds because, presumably, the mortgagee has been paid in full. However, traditionally, an assignee is but a substitute for the assignor possessing all of the rights and obligations formerly enjoyed by the assignor. Corbin On Contracts, § 861 (7th Ed.1989). Therefore, Amboy contends that as the assignee of the first mortgagee, Sun Life, who was legally entitled to the proceeds of the policy, it is now entitled to those proceeds. Indeed, according to Amboy, when it purchased the assignment, the purchase price factored in the eventual policy loss payoff. Under *Whitestone,* as well as general assignment principles, the assignor, Sun Life, no longer has any interest in the policy; but Amboy, as assignee, does.

■ This Court presumes that the rationale behind the above dictum in *Whitestone* is that when a mortgagee assigns his interest in the mortgage, it is similar to foreclosure because the mortgagee has received payment on the mortgage. And an assignor can only assign the rights possessed at the time of assignment. If the right to insurance proceeds is extinguished by assignment, then the assignee has no right to those proceeds. But this argument is nonsensical because the act of assignment itself extinguishes all of the assignor's rights in everything that is being assigned. And no court would hold, it is suggested, that an assignee receives nothing in return for its payment. Furthermore, as the Court of Appeals for the Second Circuit has explained, "the Whitestone rule protects mortgagors from deficiency actions after a foreclosure sale and brings certainty to the foreclosure proceedings." *Chrysler Capital Realty v. Grella,* 942 F.2d 160, 163 (2d Cir. 1991). No similar need arises when a mortgagee simply assigns its rights to a mortgage because the act of assignment itself would

not permit an assignee to proceed against the mortgagor for any deficiency arising from the assignment.[7]

Because the assignment discussion in *Whitestone* is only dictum which, to this Court, appears inconsistent with the holding of that case, this Court predicts that the New Jersey Supreme Court would not adopt that discussion as law, and would instead follow traditional assignment principles. Accordingly, Amboy, as assignee of the first mortgage, takes all to which the first mortgagee was entitled, including—to the extent it can establish its entitlement thereto—the proceeds from the insurance policy. Accordingly, the motion for summary judgment on this ground is denied.

### B. Amboy as second mortgagee

■ The movants also assert that *Whitestone* bars recovery on the policy by Amboy as the second mortgagee. Amboy argues that the rule is inapplicable because, although it foreclosed on the second mortgage, the consideration it received (and paid), $100, fell far short of the value of the mortgage and thus it is entitled to recover any deficiencies from the proceeds of the discussed insurance policy.

Now, this Court finds that the *Whitestone* doctrine applies to and bars the second mortgagee, Amboy, from receiving the moneys of the insurance policy. Amboy clearly falls within the doctrine because it chose to foreclose on the second mortgage after the fire. Amboy argues, nevertheless, that the foreclosure purchase price was only $100, and that because that amount did not satisfy the mortgage, it is entitled to the insurance proceeds to the extent that it, as second mortgagee, has any claim to them. *Whitestone* makes clear that if Amboy seeks to recover any deficiency, it may proceed against the

---

7. Significantly, this Court is not aware of any opinion in which *Whitestone*'s assignment dictum has been rigidly applied. Those cases that do involve assignments in this context are inapplicable. For example, in *Murphy v. Aetna Ins. Co.,* 96 A.D.2d 99, 468 N.Y.S.2d 265, 267 (4th Dept. 1983), a New York Appellate Division simply found that there had been no assignment, and thus did not analyze the legal ramifications of an assignment in this context. In *Western Employers Ins. v. Bank of Ravenswood,* 159 Ill.App.3d 22, 27, 111 Ill.Dec. 105, 512 N.E.2d 9 (Ill.App.Ct.

1987), an Illinois appellate court held that *Whitestone* precluded an assignee of a mortgagee from seeking insurance proceeds as a loss payee under an insurance agreement, but only because the assignee had foreclosed. Similarly, in *Singletary v. Aetna Cas. & Sur. Co.,* 316 S.C. 199, 447 S.E.2d 869, 870 (S.C.Ct.App.1994), a South Carolina Court of Appeals concluded that *Whitestone* barred the assignee from recovering under the insurance agreement because the assignment occurred post-foreclosure.

mortgagor only on an indemnity theory. *Whitestone,* 28 N.Y.2d at 336–37, 321 N.Y.S.2d 862, 270 N.E.2d 694. It no longer has any claims to the insurance proceeds. Thus, summary judgment against Amboy is granted to the extent that it claims it is entitled to proceeds from the insurance policy as second mortgagee.

### 2. The Settlement Agreement

■ The movants contend that the unequivocal language of the global settlement agreement between Amboy and Somers also released Generali and all other parties to this action from liability flowing from the forged check. In support they cite the following provision of the agreement:

> Any predecessors, successors, affiliates, any owned, controlled or related entities of the foregoing thirty-nine (39) individuals and entities and any agents, officers, partners, stockholders, directors, or employees of the foregoing, and any other entities in which Somers has an interest and any other persons or entities having any relationship or connection with the foregoing or with the property that Somers has or had any interest in, whether mentioned as a Somers Entity or not.

Amboy counters that neither the agreement in general, nor this provision specifically was intended to, or in fact does waive its claims against Generali or any other entity that is not controlled by or affiliated with Somers. This Court agrees.

The terms of the settlement agreement reveal clearly that Amboy intended to settle all of its claims with and against Somers and all of the many entities he controls. Thus thirty-nine different Somers corporate alter-egos are explicitly listed. However, in the event that other Somers entities existed but had been omitted by oversight from the agreement, the provision quoted above was added to ensure that those entities would also be bound by the agreement. While the language broadly states that it applies to "any other persons or entities having any relationship or connection with the foregoing or with the property," it is clear from the context of the agreement that that clause did not intend to apply to third parties, such as Generali. The movants have essentially argued that Somers bargained for and obtained their release from liability from Amboy. No factfinder, acting reasonably, would conclude that Somers' generosity was so great that he entered into a settlement to protect the interests of other parties—in return for nothing from them.

Accordingly, the motion for summary judgment on this ground is denied.

### 3. Waiver, Estoppel and Laches

■ Generali contends that (1) the execution of the settlement agreement between Amboy and Somers constituted a waiver of Amboy's claims against it, or that Amboy should be estopped on this basis from asserting these claims, and (2) that Amboy's claims are barred by laches.

■ Generali's waiver and estoppel arguments are simply a re-styling of the argument that the settlement agreement covers Generali, which the Court has previously rejected. As to the other assertion by Generali, laches is an equitable defense applicable, of course, only to claims sounding in equity. *Lavin v. Hackensack Board of Ed.,* 90 N.J. 145, 147, 447 A.2d 516 (1982). Here, Amboy's claims are legal in that they derive from an express assignment, two mortgage agreements and an insurance policy. The doctrine of laches is inapplicable. Accordingly, Generali's motion for summary judgment on these grounds is denied.

### II. Amboy's Motion for Summary Judgment Against Somers

■ Amboy seeks dismissal of Somers' counter-claim for lack of subject matter jurisdiction.[8] Somers' counters that this Court

---

**8.** Amboy also posits that Somers' has improperly labeled his counter-claim compulsory under Fed. R.Civ.P. 14(a). A counter-claim is compulsory where it arises "out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third party plaintiff." *Id.* This test is essentially the same as the case or controversy requirement of 28 U.S.C. § 1367(a). Under certain circumstances a counter-claim may be brought properly under Rule 14(a), but a Court may nonetheless dismiss for lack of jurisdiction under 28 U.S.C. § 1367(c), as a discre-

has supplemental jurisdiction over the counter-claim pursuant to 28 U.S.C. § 1367, which provides:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Thus, this Court may exercise supplemental jurisdiction over Somers' counter-claims (which indisputably confer upon this Court no independent basis of jurisdiction) only if they are so related to the factual and legal allegations contained in Amboy's complaint that they are considered part of the same case or controversy. *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Somers' counter-claim contains five counts: four directly charge Amboy's alleged breach of the settlement agreement between them by the filing of the underlying lawsuit; the last count sounds in libel and slander arising, for the most part, from statements made by Amboy with regard to this litigation. Amboy seeks to obtain, as both the second mortgagee and the assignee of the first mortgagee, the fire loss proceeds from the insurance policy. Somers contends that the settlement agreement prohibits Amboy from recovering the proceeds, and that the breach of that agreement is involved intimately with the substance of Amboy's claims.

This Court has already concluded that that agreement pertains exclusively to the interests of Amboy and Somers' Entities, and not to those of other parties to this litigation. In addition, the settlement agreement is inapplicable to Amboy as assignee of the first mortgagee because it was executed before the assignment of the first mortgage. Unless the agreement extinguished Sun Life's claims to the insurance proceeds, which it does not, then Amboy, as its assignee, can not be barred by the agreement from seeking those

proceeds. It is possible that some argument could be constructed to make the settlement agreement germane to the claim to the insurance proceeds by Amboy as second mortgagee, but the Court has granted the above motion for summary judgment against Amboy in its status as second mortgagee. In regards to Somers' libel and slander count, such is premised on Amboy's pleadings which declare that Somers' forged Sun Life's endorsement to the check issued by Generali. Whether Amboy has libeled Somers by making this statement has no bearing on Amboy's alleged entitlement to the insurance proceeds. The counter-claim of Somers is insufficiently related to Amboy's remaining claims to comprise the same case or controversy under Article III. Consequently, under 28 U.S.C. § 1367(a) this Court has no jurisdiction over it and Amboy's motion to dismiss the counter-claim is granted.

Amboy has also suggested that this Court dismiss Somers' fifth-party complaint which names, among others, certain Amboy directors as defendants, for lack of subject matter jurisdiction. That pleading is based upon the same factual and legal circumstances as the earlier discussed counter-claim. Somers, however, has obtained defaults against the fifth-party defendants. At oral argument, Amboy modified its suggestion and argued that the default judgment be vacated and the complaint dismissed for lack of subject matter jurisdiction. This Court concludes that for the same reason that supplemental jurisdiction may not be exercised over Somers' counter-claim, it may not be done with regard to his fifth party complaint. The defaults obtained by Somers are vacated, and the fifth-party complaint is dismissed.

### CONCLUSION

This matter having come before the Court on the motions for summary judgment against plaintiff Amboy to dismiss its complaint, and on the motion of Amboy to dismiss Somers' and Somers' Associates coun-

---

tionary matter. However, here, the Court has no discretion to exercise jurisdiction as the counter-claim does not present the same case or controversy as does Amboy's complaint. Therefore, for

the same reason that this Court has no subject matter jurisdiction, Somers' counter-claim has been improperly asserted under Rule 14(a).

ter-claim, and the Court having considered the arguments of the parties; and for reasons stated,

It is on June 27, 1996

ORDERED that the motion for summary judgment against Amboy is **denied;**

ORDERED that the motion for summary judgment of Amboy against Somers and Somers Associates is **granted;** and

ORDERED that defaults obtained by Somers against the fifth-party defendants is **vacated,** and that the fifth party complaint is **dismissed.**