**Obeiro GALVIS**

v.

**HGO SERVICES.**

**No. CIV. A. 97–8111.**

United States District Court, E.D. Pennsylvania.

May 18, 1999.

---

Kenneth I. Trujillo, Louis C. Ricciardi, Trujillo Rodriguez & Richards, The Penthouse, Philadelphia, PA, for Plaintiff.

Paul R. Lewis, Stevens & Lee, Wayne, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendant moves for dismissal of the Plaintiff's Amended Complaint or, in the alternative, for summary judgment in its favor on all counts. For the reasons which follow, Defendant's motion shall be granted.

### Factual Background

The plaintiff, Obeiro Galvis, is a fifty-four (54) year old, Columbian native and naturalized citizen who has resided in the United States since 1980. From 1990 until his termination on August 16, 1997, Mr. Galvis, who is also an Evangelical Baptist, was employed as a housekeeper by HGO Services. (Pl's Am. Compl. ¶ s15–18, 21, 24). Plaintiff contends that while the defendant gave insubordination as its reason for his termination, in reality he was terminated because of his age, his religion and his national origin. Plaintiff seeks an award of back pay, front pay, interest and benefits under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et. seq.*

By this motion, Defendant submits that Plaintiff's amended complaint should be dismissed for failure to state a claim against it upon which relief may be granted or, alternatively that it is entitled to the entry of judgment in its favor as a matter of law because Plaintiff failed to exhaust his administrative remedies under the ADEA, Title VII and the PHRA.

### Standards Governing Motions Under Rules 12(b)(6) and 56

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), the Court must accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn after construing them in the light most favorable to the non-movant. *Pearson v. Miller,* 988 F.Supp. 848, 852 (M.D.Pa.1997)(*citing Jordan v. Fox, Rothschild, O'Brien, and Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994)). Dismissal is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Alexander v. Whitman,* 114 F.3d 1392, 1398 (3d Cir.1997).

Under Fed.R.Civ.P. 12(b), "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In general on a motion to dismiss, a Court may not consider materials outside the pleadings and the briefs without converting a motion to dismiss into a motion for summary judgment. *Woods Corporate Associates v. Signet Star Holdings, Inc.,* 910 F.Supp. 1019, 1032 (D.N.J. 1995); *Gurfein v. Sovereign Group,* 826 F.Supp. 890, 898 (E.D.Pa.1993). Once converted into a motion for summary judgment, the motion must be evaluated under the summary judgment standards and thus, the court must construe the facts and inferences in the light most favorable to the non-moving party, granting judgment only where the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Amboy National Bank v. Generali–U.S. Branch,* 930 F.Supp. 1053, 1056 (D.N.J.1996); Fed.R.Civ.P. 56(c). Once the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question but must come forward with specific facts to show that there is a genuine issue of material fact for trial. *Id.,* citing *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See Also: Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Discussion

■ It is well-settled that as a condition precedent to filing suit under the ADEA and Title VII, a plaintiff must first file

charges with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory act. *Charles v. Hess Oil Virgin Islands Corp.,* 24 F.Supp.2d 484, 486 (D.Vi.1997) citing *Robinson v. Dalton,* 107 F.3d 1018, 1020–1021 (3rd Cir.1997); 29 U.S.C. § 626(d), 28 U.S.C. § 2000e–5(e). Likewise, a pre-condition to filing suit under the PHRA is the filing of a charge of discrimination with the PHRC or one of its local counterparts within 180 days. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3rd Cir.1997); *Vincent v. Fuller,* 532 Pa. 547, 557, 616 A.2d 969, 974 (1992); 43 P.S. §§ 959(h), 962(c). A charge may be amended to cure technical defects or omissions, or to clarify and amplify allegations made therein. 29 C.F.R. § 1601.12(b).

In this case [1], it appears that in August, 1996, plaintiff filed a charge of discrimination against HGO with the Philadelphia Commission on Human Relations ("PCHR") alleging that he was being harassed and insulted by HGO Assistant Manager Luis Padilla, that Padilla had called him a "demon" and a "crazy pastor" and accused him of stealing and that he was being treated differently than his non-hispanic, non-evangelist co-workers in that only he had been reprimanded for lateness. This charge was settled on September 30, 1996 when Defendant agreed to give Plaintiff a supply room key and provide him with an Hispanic interpreter when needed. In so settling that charge, Mr. Galvis agreed to forego his right to institute suit against HGO for any claims "arising out of the specific set of facts and circumstances which formed the basis of these cases." (sic) (Exhibits "B" and "C" to Defendant's Motion to Dismiss).

Some six months later, Mr. Galvis filed a second discrimination charge with the PCHR in which he alleged that HGO was discriminating against him on the basis of his national origin in giving him a five-day suspension and warning for defaming and verbally attacking a co-worker, and in not supplying him with the proper supply room key. The plaintiff further averred that the defendant was retaliating against him for filing his earlier charge of discrimination. (Exhibit "D" to Defendant's Motion to Dismiss). On June 12, 1997, the PCHR closed its file on this claim, having found that the charge was not substantiated. The EEOC adopted the PCHR's findings and also closed its file on this charge on September 30, 1997.

Since that time, Mr. Galvis has not filed any further discrimination charges or claims with either the EEOC, the PCHR or the PHRC, despite having been terminated on August 16, 1997. (Exhibits "E" and "F" to Defendant's Motion to Dismiss). Thus, while he does not deny that he has failed to exhaust his administrative remedies, he now asks this Court to waive or equitably toll the limitations period. In support of this request, Plaintiff has attached his affidavit averring that he tried but was denied the opportunity to file a third complaint with the Human Relations Commission and to expand the scope of the EEOC's investigation into his second complaint.

 It is now settled law in this circuit that equitable tolling of a statute of limitations may be appropriate where: (1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Robinson v. Dalton, supra,* at 1022; *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387, 1392 (3rd Cir.1994). Should these elements be shown, the equitable tolling doctrine tolls the initial running of the

1. Inasmuch as both parties have annexed additional evidentiary material and affidavits to the motion and response and Plaintiff does not oppose Defendant's request that this motion be treated as one for summary judgment, we shall, for purposes of Rule 12(b), convert this motion from one seeking dismissal to one seeking summary judgment.

statutory period until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action. *Oshiver*, at 1392.

■ Additionally, once a discrimination charge has been filed, the scope of a judicial complaint is not limited to the four corners of the administrative charge. *Doe v. Kohn, Nast & Graf*, 866 F.Supp. 190, 195 (E.D.Pa.1994). The parameters of a subsequent private action in the courts is defined by the scope of the investigation which can reasonably be expected to grow out of the charge of discrimination. *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 965 (3rd Cir.1978); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–399 (3rd Cir.1976). Under these circumstances, the legal analysis turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it. *Bailey v. Storlazzi*, 729 A.2d 1206, 1215 (1999).

In his affidavit, Mr. Galvis attests that he followed the same procedure in filing his first and second complaints with the Philadelphia Commission on Human Relations in that he met with a Spanish speaking receptionist and a PCHR caseworker or attorney who did not speak Spanish. The receptionist translated the caseworker's questions to plaintiff and plaintiff's responses and the caseworker/attorney prepared the complaints. The complaints were then presented to Mr. Galvis and he signed them, albeit without having them read to him in Spanish. He did not complete the cover sheet or check the boxes indicating the type of discrimination he was claiming as this was done by the caseworker/attorney who prepared the complaints.[2] Plaintiff states that he did not meet with anyone regarding his first complaint until the settlement conference and

that he was not contacted by anyone regarding his second complaint.

Following his termination in August, 1997, Mr. Galvis went to the PCHR to file a third complaint against HGO and met with the same Spanish speaking receptionist who had translated for him previously. Plaintiff avers that this time the receptionist told him that there was nothing the Commission could do for him because they were sending the case to the EEOC. The receptionist further advised Mr. Galvis that he should get a lawyer and go the EEOC to pursue his discrimination claims. Plaintiff avers that he tried to get a lawyer but could not afford to retain one. He did, however, find a lawyer who agreed to write a letter on his behalf to the EEOC for $200 and that he took this letter to the EEOC and tried to communicate the grounds for his second complaint, but no one there spoke Spanish.

Mr. Galvis' affidavit is refuted by the record evidence produced by the defendant here. Indeed, it is apparent from the files of both the EEOC and the PCHR which are attached to the defendant's motion, that the plaintiff understood the terms and conditions of the settlement of his first charge, that he participated in the PCHR's investigation of his second charge and that he met with PCHR Compliance Investigator Denise Kirkland and an interpreter on June 5, 1997. At that time, Ms. Kirkland's proposed recommendation of "Charge Not Substantiated" was reviewed in detail with Mr. Galvis and, according to Ms. Kirkland's documentation, Mr. Galvis agreed that his charge was not discrimination. Mr. Galvis was then advised verbally and in writing as to what his options for review and/or appeal were and told that if he wished to pursue further legal action, he should contact an attorney. The PCHR and EEOC files do not contain copies of any letters from an attorney written on behalf of the plaintiff and there is no evi-

---

**2.** The first complaint charges discrimination based upon plaintiff's national origin and religion. The second complaint charges discrimination on the basis of plaintiff's national origin and in retaliation for his previous complaint.

dence that Mr. Galvis sought to amend his second complaint before the EEOC to include a claim that his termination resulted from national origin, age and religious discrimination.

■ Furthermore, Mr. Galvis does not aver and does not produce any evidence upon which this Court could find that there is a close nexus between the facts supporting his second discrimination claim based upon national origin and retaliation or that the additional charges made in the judicial complaint (alleging religious, national origin and age discrimination) could fairly be considered explanations of or outgrowths of the original charges. We therefore cannot find any grounds which would justify holding that the exhaustion requirements which are pre-requisite to filing this action should be deemed waived by virtue of plaintiff's having filed a previous discrimination charge.[3]

■ Likewise, we cannot find that the requirements for equitable tolling of the limitations period have been satisfied here. Indeed, plaintiff does not claim that HGO misled him or that he filed this action in the wrong forum. He would therefore only be entitled to equitable tolling if he can show that he was prevented in some extraordinary way by a Human Relations or EEO Commission counselor from asserting his rights.

On this issue, we are guided by the Third Circuit's decision in *Robinson v. Dalton, supra.* In that case, Robinson, a former employee of the Navy shipyard brought suit under Title VII alleging that he was fired in retaliation for having filed three previous charges of racial discrimination with the EEOC. The Navy moved to dismiss or for summary judgment asserting that Robinson had failed to exhaust his administrative remedies. In defense of that motion, Robinson alleged only that he contacted an EEO counselor by telephone

within the required time frame for filing a charge and was advised that in light of his pending complaints he did not have to file an additional complaint for retaliatory discharge. Accepting as true Robinson's version of the events and disregarding the EEOC records offered by the Navy which showed that plaintiff appeared for his initial counseling session six months after he was discharged, the Third Circuit held that "one phone conversation with an EEO counselor does not rise to the level of being prevented in an extraordinary way by the EEOC from asserting his rights. Nor, using the language of the EEOC regulation, was he prevented by circumstances beyond his control from timely submitting the matter." *Robinson,* 107 F.3d at 1023. The *Robinson* Court reasoned further:

"Robinson was not inexperienced in the procedures required to maintain a discrimination complaint, having already filed three such complaints....(citations omitted) His failure to confirm the advice allegedly received on the telephone by written communication or even by another telephone communication shows an absence of the due diligence which the Supreme Court has regarded as a condition for equitable tolling...Furthermore, should a plaintiff in Robinson's position be able to circumvent exhaustion requirements by simply asserting he was given erroneous telephone advice from an agency employee, equitable tolling would be converted from a remedy available only sparingly and in extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines. We cannot extend the doctrine that far. Thus we agree with the district court that Robinson had not met his burden of

---

**3.** Plaintiff also does not deny that he received the June 12, 1997 letter notice from the PCHR that it had dismissed this second discrimination charge as unsubstantiated and

that unless he requested EEOC review of this action, the EEOC would adopt the findings and take the same action as the PCHR had in his case.

showing that an EEO counselor had misled him into failing to follow the proper procedures."

107 F.3d at 1023–1024.

Applying the *Robinson* rationale to the case at hand and accepting the plaintiff's averments as true in disregard of the contents of the PCHR and EEOC files annexed to Defendant's motion, we find that like Robinson, Mr. Galvis was not inexperienced in the procedures for filing administrative discrimination charges having previously filed two of them. Although he alleges that he told the PCHR's Spanish-speaking receptionist that HGO had continued to discriminate against him and had now terminated him for the reasons they had discussed before and "that there were numerous discriminatory practices involved in my Second Complaint and that they should investigate," he does not allege and there is no showing that he attempted to file a **separate**, third charge with any agency alleging that he had been unlawfully terminated because of his national origin, religion and age. Nor does plaintiff aver or produce any evidence that he made anything other than the one attempt to speak or file a complaint with either agency to the effect that his termination was based upon age, origin and religious discrimination. We therefore find that plaintiff has failed to show that he was prevented in an extraordinary way from pursuing his rights and his administrative remedies. Defendant's motion for summary judgment is therefore granted.