# Mengel, Appellant, v. Reading Eagle Company.

*Libel—Libel per se—Libel by innuendo—Province of court and jury—Libelous matter in judicial proceedings—Privileged publication—Evidence—Mitigation of damages.*

1. Written words injurious to one in his business, calling, trade, or profession are libelous, and if the common understanding of mankind applies a libelous meaning to them, they are to be so construed as a matter of law; if, however, the words are of dubious import, or are not in themselves libelous, but their meaning is averred by innuendo, it is for the court in civil cases to instruct the jury whether they are libelous, assuming the innuendo to be true; it is for the jury to say whether they were used in the sense ascribed to them by innuendo.

2. Proceedings in courts of justice, as taken from the public records, may be freely printed and published, even though libelous, without subjecting the publisher to liability for injuries caused thereby.

3. Where, in trespass for libel, it appeared that defendant's newspaper had stated the plaintiffs, who were loan and investment agents, had induced an investor to invest $3,000 in a mortgage covering property assessed at only $1,750;—that plaintiffs had persuaded such investor to pledge the mortgage with a trust company as security for a loan of $1,625 which plaintiffs had negotiated for him;—that said investor "could secure no satisfaction" when he called on the day before the mortgage matured to arrange for the payment of the balance of the loan then desired by him;—that the mortgage was sold by the pledgee for $1,700;—that no benefit was derived by the investor from this investment, but he was charged six per cent. interest on the loan;—that an action for deceit had been brought;—and the following headline was printed to the article:—"Suit for Damages; Alleges Deceit."—and plaintiffs averred the publication to be libelous per se and by innuendo, the court rightly refused to charge that the publication was libelous as a matter of law, but as to the innuendo, was justified in leaving to the jury the question whether the article, read as a whole, impeached plaintiff's honesty in their business; the court also correctly charged that the matter in the headline was privileged, even though libelous, since the præcipe in the suit mentioned in the article, named the action as "trespass for deceit."

4. Where, in an action for libel, it appeared that the statements complained of had been taken from a copy of the plaintiff's state-

ment of claim in an action for deceit, given to defendant's reporter by plaintiff's attorneys in such action before the original statement was filed, the statement of claim was admissible in evidence, as tending to show how the publication happened to be made, and in mitigation of damages if it ought not to have been made.

*Practice, Supreme Court—Assignments of error—Exceptions to rulings.*

5. Assignments of error complaining of rulings to which no exception has been taken at the trial will be dismissed.

Argued March 3, 1913. Appeal, No. 211, Jan. T., 1912, by plaintiffs, from judgment of C. P. Berks Co., Aug. T., 1908, No. 74, on verdict for defendant in case of J. Hain Mengel and Ralph H. Mengel, doing business as Mengel & Mengel, v. Reading Eagle Company. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCH-ZISKER, JJ. Affirmed.

Trespass for libel. Before ENDLICH, P. J.

From the record it appeared that one Kornacki brought a suit in trespass against Mengel & Mengel, real estate, loan, and insurance agents. After the suit was begun, but before the statement of claim was filed, defendant's reporter went to the office of Kornacki's attorney, and secured a copy of the statement of claim which was to be filed, and sent it to the editors of the "Reading Eagle," who made certain changes in the statement and then published it.

The published article, alleged to be libelous, was as follows:

"SUIT FOR DAMAGES; ALLEGES DECEIT.

"Andrew J. Kornacki, through W. B. Bechtel, instituted an action for deceit against Ralph. H. Mengel, J. Hain Mengel and the Commercial Trust Company, to recover damages. It is alleged that Mr. Kornacki had $3,000 on deposit in the Reading Trust Company drawing 3 per cent. interest and that the Messrs. Mengel called upon him prior to Oct. 21, last, at least several

times, representing the advisability of withdrawing this money and engaging them to invest it in the purchase of a mortgage against property owned by Samuel Davies, 229-231 South Ninth street. He drew his check on the Trust Company for $3,000 to their order and invested it in the mortgage. It is claimed that at that time the property was assessed for city taxation at $1,750. On Dec. 23, 1907, Mr. Kornacki, desiring to borrow $25, obtained the amount from them, when it is alleged they induced him to sign a reassignment of the bond and mortgage to the Commercial Trust Company.

"The total amount loaned and disbursed for Mr. Kornacki by the Messrs. Mengel was $1,625. One hundred and fifty dollars, it is alleged, being still retained by them.

"On May 14, 1908, one day before the maturity of the $3,000, Mr. Kornacki called for the purpose of having them arrange for the payment of the balance then desired by him, but he says he could not secure satisfaction.

"On June 13, 1908, Mengel & Mengel, acting for the Commercial Trust Company, caused the bond and mortgage to be sold at the Reading Real Estate Exchange to Ralph H. Mengel, its attorney, for $1,700. Mr. Kornacki, it is claimed, at no time derived any benefit from the investment, and he says he was charged 6 per cent. interest for the loan."

The court, against the plaintiffs' objection, admitted in evidence the statement of claim in the Kornacki case, filed eleven days after the publication, which is the basis of the fourth assignment of error.

Other facts appear by the opinion of the Supreme Court.

Verdict for defendant, and judgment thereon. Plaintiffs appealed.

*Errors assigned* were various instructions to the jury, and various rulings of the trial judge.

*Cyrus G. Derr,* with him *Ralph H. Mengel,* for appellant.—The article related to the appellants' conduct of their profession or business, and was on the face of it prejudicial to their character in that business, and the court below should have declared to the jury that the article was libelous: Pittock v. O'Niell, 63 Pa. 253; McIntyre v. Weinert, 195 Pa. 52; Holland v. Flick, 212 Pa. 201; Hayes v. The Press Co., 127 Pa. 642.

The publication complained of having been made in the appellee newspaper June 19, 1908, it was error to admit in evidence the plaintiff's statement in the Kornacki case filed July 1, or eleven days after the injury done by the appellee to the appellants was complete: Cummings v. City of Williamsport, 84 Pa. 472; Velott v. Lewis, 102 Pa. 326; Colonial Trust Co. v. Getz, 28 Pa. Sup. Ct. 619.

*Isaac Hiester,* for appellee.—Even if the article was not true it was not libelous: Colbert v. Caldwell, 3 Grant 181; Weierbach v. Trone, 2 W. & S. 408; Stitzell v. Reynolds, 59 Pa. 488; Pittsburgh Co. v. McCurdy, 114 Pa. 554; Price v. Conway, 134 Pa. 340; Lancaster v. French, 2 Strange 797; Garr v. Selden, 6 Barbour 416; Foster v. Small, 3 Wharton 138; Bruce v. Reed, 104 Pa. 408; Aspell v. Smith, 134 Pa. 59; Pittock v. O'Niell, 63 Pa. 253; Collins v. Dispatch Co., 152 Pa. 187; Meas v. Johnson, 185 Pa. 12; Montgomery v. New Era, 229 Pa. 165.

OPINION BY MR. JUSTICE BROWN, June 27, 1913:

The main complaint of the appellants is that the learned trial judge failed to instruct the jury that the publication which led to this action was libelous. If he had so instructed them, he would have erred.

Written or printed words injurious to one in his business, calling, trade or profession are libelous; and if, standing alone, "the common understanding of mankind takes hold of the published words, and at once,

without difficulty or doubt, applies a libelous meaning to them," they are to be so construed as a matter of law: Hayes v. Press Company, 127 Pa. 642. If words are not in themselves libelous, but are averred to be so by innuendo, it is for the court in civil cases to instruct the jury as to whether they are libelous, assuming the innuendo to be true: Pittock v. O'Niell, 63 Pa. 253; Collins v. Dispatch Publishing Company, 152 Pa. 187; but where the words are of dubious import, and their meaning is averred by innuendo, the truth of the innuendo is for a jury—that is, if the words are susceptible of the meaning ascribed to them, it is for a jury, and not for the court, to say whether they were used in that sense: Pittsburgh, Allegheny & Manchester Passenger Railway Company v. McCurdy, 114 Pa. 554; Price v. Conway, 134 Pa. 340; Collins v. Dispatch Publishing Company, supra; Wallace v. Jameson, et al., 179 Pa. 98. Under the foregoing and many other authorities to the same effect it was for a jury to say whether the words of which the appellants complain were libelous.

What is there on the face of the publication involved in the present case which makes it libelous per se? Nothing stated in connection with the advice alleged to have been given by the appellants to Kornacki to withdraw his money from the trust company and invest it in a mortgage reflects upon their personal integrity. The property upon which the mortgage was given may have been assessed at only $1,750, but non constat, that it was not worth much more and that it did not amply secure the loan. There is no charge that deception of any kind was practiced by the appellants upon Kornacki in inducing him to take the mortgage. Nothing imputing dishonesty or unfair dealing to them is to be found in that part of the publication relating to their negotiation of a loan from the trust company to Kornacki, secured by an assignment of the mortgage. The statement that he called for a settlement, but "could not secure satisfaction" is, to say the least, very vague. There is not

an element of libel per se in it. The appellants may have had good reason for not giving Kornacki the satisfaction he demanded. What he wanted does not appear in the publication, and his failure to get it may have been due to the trust company, and not to the appellants at all. There is no imputation of any wrongdoing on their part, nor does it appear from the publication that they intended to deprive Kornacki of anything that was due him. The same is true of what it is alleged the appellants did as the agents or attorneys of the trust company in causing the bond and mortgage to be sold. As to this part of the publication the learned judge below, in his opinion denying a new trial, very properly said: "The mere fact that a $3,000 mortgage was sold for $1,700 is not conclusive of the fraudulency of the sale or of the worthlessness of the property mortgaged. If the agent of the company, in the absence of competing bidders, ran it up to the amount of its claim against Kornacki, that circumstance would rather be indicative of good faith towards him; and the statement affords room for that inference as readily as for any other. What remains, viz, that 'it is claimed' that Kornacki at no time derived any benefit from the investment, i. e., from his purchase of the $3,000 mortgage, and that he was charged 6 per cent. interest upon his loan from the company, implies no violation or neglect of duty on the part of anyone. To say that a man who bought a mortgage, immediately pledged it as security for a loan, defaulted in payment of the latter, and let the mortgage be sold by the pledgee for the amount of the debt, has derived no benefit from his investment, may in a general, though perhaps inaccurate, way of speaking be true enough; but in itself such a statement reflects on nobody concerned,—any more than the additional one that upon the loan made to him by the pledgee he was charged with legal interest. It would thus seem to follow that, as regards the body of the publication complained of, there is nothing in it which could properly be

pronounced by the court as a matter of law to be libel-ous."

While there is nothing in the body of the publication which would have justified the court in pronouncing it libelous as a matter of law, it must be viewed as a whole, including its headlines, in which deceit is said to be charged in the action brought by Kornacki against the appellants and the trust company. If such a charge was made in that action, it was a matter of public record, and as such the appellee was privileged to publish it. Though no declaration had been filed in the action against the appellants at the time the appellee published the account of it, it appeared by competent testimony that the præcipe directed the prothonotary to issue a "summons in an action of trespass for deceit"; and the præcipe was part of the record: Fitzsimons v. Salomon, 2 Binn. 436; Wilkinson v. North East Boro., 215 Pa. 486. The jury were properly instructed that, among publications which a newspaper is justified in making, and for which its proprietors cannot be held for dam-ages, even if they be libelous, is that of proceedings in courts of justice as taken from the public records.

Counsel for appellant, having evidently been of opin-ion that the publication could not be pronounced libel-ous as a matter of law, added what, in substance, is an innuendo, and the truth of it, as applied to the words used, was, under all the authorities, for the jury, who were properly instructed to take the entire article into consideration—headlines and all—and to read it as ordinarily intelligent men would read it in determining whether it impeached the integrity or honesty of the appellants in the business in which they were engaged. The verdict conclusively settled that question of fact. The first three assignments of error are overruled.

The fourth assignment complains of the admission in evidence of the plaintiff's statement in Kornacki v. the appellants. While it is true the declaration or state-ment was not filed until nearly two weeks after the pub-

lication of the article complained of, there was testimony that, before it was published, a reporter of the appellee called upon counsel for Kornacki and got a copy of the declaration. Under the circumstances, it was a proper item of evidence, tending to show how the publication happened to be made and in mitigation of damages if it ought not to have been made. As no exceptions were taken to the rulings of the court which are the subjects of the fifth and sixth assignments, the same are dismissed.

The record is entirely free from error and the judgment is affirmed.