With respect to policy(ies) being issued by you to applicant named hereon, applicant has assigned (by power of attorney) all unearned premium to Universal Premium Acceptance Corporation.

HULTEN TRUCKING SYSTEMS

W TALBOT INS AGENCY

| TOTAL PREMIUM | POLICY NUMBER | EFFECTIVE DATE |
|---|---|---|
| 5883.00 | WC005931488 | 12-12-91 |

ACKNOWLEDGEMENT

LANDMARK BANK

�1

⌐815424⌐ ⦙0810169321⦙ 0410051254⌐ ⫽0000394200⫽

⌐815424⌐⦙0810169321⦙ 0410051254⌐ ⫽0000394200⫽

Diagram A

DE '91 13
031000037
DE '91 10

DE '91 12

GREAT AMERICAN INSURANCE COMPANY

①

Diagram B

John DOE, Esquire (pseudonym for an attorney), Plaintiff,

and

Equal Employment Opportunity Commission, Plaintiff–Intervenor,

v.

KOHN NAST & GRAF, P.C., d/b/a Kohn Klein Nast & Graf, P.C. and Kohn Sa-

vett Klein & Graf, P.C., Harold E. Kohn, and Steven Asher, Defendants.

Civ. A. No. 93–4510.

United States District Court, E.D. Pennsylvania.

Oct. 6, 1994.

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, for John Doe.

John Doe, pro se.

J. Freedley Hunsicker, Jr., Gregg R. Melinson, Drinker, Biddle & Reath, Donald J.P. Sweeney, Robyn F. McGrath, Sweeney, Sheehan & Spencer, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Barbara A. O'Connell, Patrick T. Ryan, Drinker, Biddle & Reath, Philadelphia, PA, for Kohn Nast & Graf, P.C. and Steven A. Asher.

Carmen R. Matos, Deborah M. Floyd, E.E.O.C., Mary M. Tiernan, Jose L. Perez, E.E.O.C., Philadelphia, PA, for E.E.O.C.

Ronald P. Schiller, Piper & Marbury, Philadelphia, PA, Madeleine Schachter, New York City, for CBS, Inc.

Carl A. Solano, Schnader Harrison Segal & Lewis, Philadelphia, PA, for National Broadcasting Co., Inc., and Capital Cities/ABC, Inc.

Carmen R. Matos, E.E.O.C., Philadelphia, PA, for Ellen Braffman.

Robyn F. McGrath, Sweeney, Sheehan & Spencer, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Barbara A. O'Connell, Philadelphia, PA, for Harold E. Kohn.

## OPINION

GAWTHROP, District Judge.

This case today before the court on defendants' motion for partial summary judgment, involves a lawyer infected with the Human Immunodeficiency Virus ["HIV"] who claims that his law firm fired him because of his infection.

The defendants seek summary judgment on the portions of the defamation and invasion of privacy claims that plaintiff added to his second amended complaint; on the defamation and invasion of privacy claims against Harold Kohn individually; and on the claims that defendants violated sections of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, *et seq.* (ADA), which prohibit employers from making improper medical inquiries and from interfering, coercing or intimidating employees who exercise their rights under the ADA.

*Standard of Review*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A party opposing summary judgment must marshal sufficient facts to show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

*Defamation*

The defendants advance several legal and factual arguments in support of their motion for judgment on the defamation claim added to the second amended complaint. I need not address all of these arguments. Upon the following reasoning, I find that, as a matter of law, these statements were fair comment upon judicial proceedings. As such, they were conditionally privileged against defamation suits, and defendants did not abuse this privilege.

The statements at issue appear at ¶¶ 53–56 of the Second Amended Complaint:

"53. On October 5, 1993, following the filing of this lawsuit, defendants, through their counsel Drinker Biddle & Reath, issued false press statements to members of the Philadelphia media for publication which stated that Attorney Doe:

... engaged in improper conduct with regard to the firm, and left when this was called to his attention.

54. In early December of 1993, defendants told the National Law Journal for publication that Attorney Doe had 'erratic attendance and lack of commitment.'

55. In mid-December of 1993, defendants told members of the AIDS health care advocacy group ACT–UP that Attorney Doe 'was erratic and inconsistent' and had 'recent performance problems.'

56. In January and February of 1994, defendants, through their counsel Sweeney, Sheehan & Spencer, issued false press statements to NBC news and ABC news for broadcast to the public which stated that Attorney Doe 'engaged in improper conduct' and 'left when this was called to his attention.' "

The Kohn firm issued these statements during a time when plaintiff was holding press conferences and appearing on television news shows to discuss his allegations.

■ Under Pennsylvania law, attorneys and parties to a judicial proceeding enjoy an absolute privilege against defamation suits for any statements made during the course of those proceedings. *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323, 275 A.2d 53, 56 (1971). When a party makes these same statements outside of the courtroom by issuing a press release or holding a news conference, it may not claim this privilege.

■ However, individuals may invoke a qualified, or conditional, privilege when they make out-of-court statements if those statements are a fair and accurate report of statements made or pleadings filed in a judicial proceeding, provided that the reporter, the individual, does not abuse the privilege or make his report with the sole purpose of causing harm to the person defamed. *See, e.g., Heyward v. Stouffer*, 1991 WL 275604 (E.D.Pa. December 23, 1991); *Binder*, 442 Pa. at 323, 275 A.2d at 56.

■ The statements issued by the defendants are a fair and accurate report of pleadings and in-court statements made by defendants at future stages of the case. The defendants have repeatedly alleged, both in their papers and in open court, that they dismissed the plaintiff in March, 1993 because he had engaged in what they considered to be improper conduct. They have also alleged that they decided not to renew plaintiff's contract because his performance and attendance record did not meet their standards. *See, e.g.*, Affidavit of Samuel E. Klein, Exhibit 37, Appendix to Defendants' Motion for Summary Judgment ("I recall clearly that Mr. Asher expressed some dissatisfaction with Mr. Doe's work perfor-

mance. Mr. Asher stated that Mr. Doe was not around when Mr. Asher needed him, particularly in the mornings, and that Mr. Doe seemed to lack commitment and dedication to his work.").

■ Pennsylvania courts have not addressed the issue of whether the fair comment privilege applies to a party's fair and accurate report of statements and pleadings that have not yet been made or filed, but will be at the appropriate stage of the litigation.

■ Under Pennsylvania law, the fair comment privilege does apply to reports of pleadings even in the absence of judicial action upon the pleadings. *See Pittock v. O'Niell*, 63 Pa. 253 (1869); *Mengel v. Reading Eagle Co.*, 241 Pa. 367, 88 A. 660 (1913); *Godwin v. Daily Local News*, 36 Chester Co.Rep. 35, n. 5 (1987); *see also Kimball v. Post Pub. Co.*, 199 Mass. 248, 85 N.E. 103 (1908) (Pound, J.) ("incongruous result" follows if newspaper allowed to report document because judicial action taken upon it but if document has been filed but not yet heard, newspaper is subject to libel action for printing it); Eldredge, The Law of Defamation, § 79(b)(1) at 427, 430 (1978) (trend in cases decided since 1972 is that reports of pleadings upon which no judicial action has been taken comes within privilege to report judicial proceedings); *but see Hanish v. Westinghouse Broadcasting Co.*, 487 F.Supp. 397 (E.D.Pa.1980).

The same "incongruous result" observed by Judge Pound would occur in this case if the fair comment privilege did not apply to statements that the party intends to make during the course of judicial proceedings. Plaintiff would be permitted to report his own allegations because he has filed his pleadings, but defendant is subject to a defamation claim because he has not had the opportunity to file a response with the court.

The essence of the defamation claim is that defendants are averred to have made certain comments setting forth with some particularity the reasons which they claim culminated in plaintiff's termination, those reasons being pejorative of the plaintiff to the extent of being defamatory. The defense argues that the defendants published these comments in

response to the complaint and concomitant press conference.[1] The argument is that the defense should be allowed to respond to those utterances, and should not have to wait until its response is buttressed by its formal responsive pleadings, upon which the defense would be permitted to make fair comment, when finally pled. I agree with the defense position.

When the defense well knows that its pleading will in fact, formally set forth the position of the defense, which pleadings will inexorably be filed in due course, I conclude that they may fairly comment in advance. I find defendants' statements to be fair comment on the legal proceeding, and fairly within the defendants' First Amendment rights to speak to the cause of the action with pecuniary impunity.

*Invasion of Privacy*

Defendants seek summary judgment on the invasion of privacy claim, added to the Second Amended Complaint. According to the allegations, defendants allegedly opened plaintiff's personal mail with knowledge that they lacked the authority so to do. The defendants assert that the claim is untimely and that the evidence is insufficient.

■ Pennsylvania law provides a one-year statute of limitations on claims for invasion of privacy. 42 Pa.C.S. § 5523. The incidents at issue occurred as early as March, 1993. Plaintiff did not serve his Second Amended Complaint until July 1994. On this basis, defendants argue that the claim is time-barred.

The plaintiff claims that he did not begin to discover that this mail had been opened, and in some cases copied and resealed, until August, 1993, when the defendants showed the court copies of letters to plaintiff from media outlets. Therefore, he argues, the limitations period on his claim did not begin to run until August, 1993, and his July amendments were timely.

[10] Under the discovery rule, the statute of limitations does not begin to run "until the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury." *Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). The defendants argue that because the plaintiff knew that the firm opened his mail before August, 1993, his action is untimely. The plaintiff knew that the firm opened mail addressed to him if the mail might be related to firm business because the firm had forwarded personal mail mistakenly opened that contained a notation to that effect. The letters from media outlets did not contain this notation when Doe received them. The plaintiff has also alleged that the firm opened mail marked "PERSONAL AND CONFIDENTIAL." He had no reason to believe that the firm opened this envelope in its attempt to keep track of business related mail sent to him.

The limitations period on this claim was tolled until August, 1993, at the earliest, when plaintiff discovered that the firm opened personal mail, and he was not notified that it had done so. The amendments are not time-barred.

■ Defendants also argue that the Kohn firm was authorized to open any mail sent to plaintiff at its address. An employer is not authorized to open mail addressed to a

---

1. I find it a source of some regret that in this day and age, the vogue appears to be that lawyers seem to be unable to resist corralling a press conference, inviting all the media, both paper and electronic, to trumpet the alleged virtues of their case before the jury has been impaneled. Too many lawyers are trying to try their cases in that arena rather than the proper forum for getting to the truth, within the bounds of due process and fair play. Nevertheless, if that's the way the litigious game is being played today, it strikes me as fair game that the other side be given the opportunity to talk back from a pedestal of similar visibility, without being susceptible to a defamation judgment.

Unfortunately, although I expressly do not say this of the able and ethical counsel in this case, Rule of Professional Responsibility 3.6(a) ("A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding") seems to be more and more honored in the breach, treated as a canonical dead letter, than genuinely adhered to by trial lawyers, either in letter or in spirit.

person at his workplace that appears to be personal. *See Vernars v. Young,* 539 F.2d 966 (3d Cir.1976). One envelope was marked personal. As discussed above, the defendants opened other letters and copied or retained them without informing the plaintiff that it had done so. In light of these facts, a jury must determine whether the defendants reasonably believed that they were authorized to open these letters.

A reasonable jury might also be able to conclude from this evidence that even if the Kohn firm had the authority to open mail that might be related to firm business, it did not perform the authorized task in a manner calculated to protect plaintiff's privacy. The method by which an employer carries out an authorized inquiry into an employee's private concerns may constitute an intrusion upon the employee's seclusion if that method fails to give due regard to the employee's privacy or reveals personal matters unrelated to the workplace. *See Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611, 621 (3d Cir.1992).

In *Borse,* the Third Circuit noted that a urine-testing program might constitute an invasion of privacy, if for example, the testing revealed medical conditions such as diabetes or pregnancy in addition to the presence of drugs. A testing program might also intrude upon an employee's privacy if it were not conducted in a discreet manner. For example, an employer should not put an observer in the bathroom with the employee when less intrusive security measures sufficiently preserve the accuracy of tests. *See id., citing Kelly v. Schlumberger Technology Corp.,* 849 F.2d 41 (1st Cir.1988). In this case, even if defendants reasonably believed that the letters to plaintiff from media outlets were related to firm business, the defen-

dants might still have invaded plaintiff's privacy by retaining copies of the letters, once they had determined that the letters were personal, and sending them on to plaintiff without informing him that the letters had been opened.

The defendants also argue that a reasonable person would not have found the acts alleged to be "highly offensive." The alleged acts described above create a genuine issue of material fact as to this issue. I must leave it to the jury to determine whether defendants' actions would have been highly offensive to the reasonable person.

### ADA Claims

The defendants argue that they are entitled to judgment on the two ADA claims added in the Second Amended Complaint because plaintiff did not file a charge with the EEOC as to these claims, and therefore he failed to exhaust his administrative remedies. 42 U.S.C. § 12117(a).

■■■ According to well-settled law, the scope of a judicial complaint is not limited to the four corners of the EEOC charge. "The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination ... including new acts which occurred during the pendency of proceedings before the Commission." *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3d Cir. 1976); *see also Hicks v. ABT Assoc., Inc.,* 572 F.2d 960 (3d Cir.1978) (plaintiff permitted to add sex discrimination claim even though EEOC only investigated race discrimination allegation because sex discrimination claim would have grown out of proper EEOC investigation of race claim).[2]

---

**2.** Defendants cite *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir.1970) for their argument that plaintiff's judicial complaint is limited to the scope of his charge because he is a lawyer. Although the rationale for the *Sanchez* rule is that many EEOC complainants are unschooled in legal technicalities and unrepresented by counsel, *Sanchez* states that the rule is to apply to all complainants, regardless of their educational background.

It goes without saying, of course, that it is irrelevant whether Celia Sanchez is educated or uneducated. The point is that *some* charg-

ing parties are uneducated and inarticulate, and the procedural rules that we develop in this case and in others must be sufficiently liberal to protect their rights. Consequently, we decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out.

431 F.2d at 463 (emphasis in original). Even though plaintiff is a lawyer, *Sanchez* declines to exempt anyone from the purview of its ruling. *See id.*

The most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement. *Sanchez*, 431 F.2d at 462. The facts that support plaintiff's claims of improper medical inquiry and intimidation and coercion appear in the administrative charge. Plaintiff's Exhibit I, ¶¶ 6–23. Therefore, one would reasonably expect the claims to have grown out of a proper EEOC investigation. Plaintiff has not failed to exhaust his administrative remedies.

*Improper Medical Inquiry*

Defendants also argue that Doe has failed to state a claim that the firm made an improper medical inquiry. Section 12112(d)(4)(A) of the ADA prohibits an employer's "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." Defendants argue that the provision is only intended to prohibit employers from requiring medical tests or from speaking to an employee's doctors about his medical history. According to the plain language of the provision, however, it is not restricted to such cases. The provision also prohibits an inquiry directed to the employee about the nature or extent of his illness.

Plaintiff alleges that he began to look sickly in the winter of 1992, and he told Mr. Asher that he was ill. He also alleges that Mr. Asher knew that a paramedic came to the firm and drew his blood. According to the plaintiff, Mr. Asher became suspicious about the nature of his illness, searched plaintiff's office, discovered the letter from Johns Hopkins University AIDS Services and placed it in his personal file. This sequence of events, if proved, states a claim that Mr. Asher made an improper medical inquiry of the plaintiff. An employer may not make a medical inquiry or require a plaintiff to submit to testing to confirm its suspicions about the nature of an employee's illness, which is what plaintiff alleges that Mr. Asher did. *See* 29 CFR § 1630.14 (App.) ("For example, if an employee suddenly starts to use sick leave or starts to appear sickly, an employer could not require that employee to be tested for AIDS, HIV infection, or cancer unless the employer can demonstrate that such testing is job-related or consistent with business necessity.").

If Mr. Asher had asked plaintiff openly if he had AIDS, or had required plaintiff to submit to an HIV test to confirm Mr. Asher's suspicions, his actions would have been improper, under the plain language of the ADA. The fact that Mr. Asher conducted his alleged inquiry surreptitiously, as opposed to directly asking plaintiff: "Do you have AIDS?," or words to that effect, does not render plaintiff's claim invalid.

*Retaliation*

Finally, defendants argue that plaintiff has failed to state a claim that they intimidated, coerced, or interfered with his attempts to exercise his rights under the ADA. *See* 42 U.S.C. 12203(b). Plaintiff alleges that the firm asked him to leave in March 1993 because it discovered that he planned to file a lawsuit accusing the firm of refusing to renew his contract on the basis of his HIV positive status. This allegation by itself is sufficient to support a claim under § 12203(b).