Stephen FAKETE,

v.

AETNA, INCORPORATED, d/b/a Aetna/US Healthcare.

No. CIV. A. 00–CV–1391.

United States District Court, E.D. Pennsylvania.

May 14, 2001.

726

Andrew M. Smith, Marcino, Bowman & Smith, Fort Washington, PA, for Plaintiff.

John M. Elliott, Brian J. McCormick, Jr., Eric J. Bronstein, Raymond J. Santarelli, Elliott, Reihner, Siedzikowsky, North

& Egan, P.C., Blue Bell, PA, for Defendant.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff Stephen Fakete filed the instant suit against Defendant Aetna/US Healthcare alleging age discrimination and retaliatory termination. In separate Motions [1], Defendant seeks summary judgment on all counts of the Second Amended Complaint, as well as Plaintiff's request for punitive damages. For the reasons that follow, the Court grants judgment in favor of Defendant on Counts I, II, III and IV, and dismisses Defendant's motion with respect to punitive damages as moot.

### I. Background

The Second Amended Complaint [2] alleges the following facts. On April 26, 1992, Stephen Fakete ("Fakete") was hired by U.S. Healthcare ("USHC") as an audit consultant. In 1996, USHC merged with Aetna, Inc. to form Aetna U.S. Healthcare ("Aetna"). At the time of the merger, Fakete was 54 years old and the oldest audit consultant at USHC. The merger agreement prevented Aetna from terminating any USHC employees for at least 2 years following the merger, absent approval from a USHC executive. That agreement expired in July, 1998, when Fakete was 56 years old and eligible to retire on a substantial pension within 3 years.

In September of 1998, Aetna offered Fakete a transfer to the position of Vice President of Technical Services in the area of disaster recovery planning. This pro-

---

1. Defendant filed three motions: Motion for Summary Judgment on Count II; Motion for Summary Judgment on Plaintiff's Requests for Punitive Damages; and Motion for Summary Judgment on Counts I, III and IV.

2. By Order dated July 17, 2000, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiff's Complaint, and granted leave to file an amended complaint. Plaintiff filed an Amended Complaint on August 3, 2000, and a Second Amended Complaint on August 14, 2000.

motion, however, was overruled by Aetna's Supervisor of Internal Auditing, Diane Souza ("Souza"). Fakete believes that this denial of his promotion was due to his age to reduce Aetna's future liability for retirement benefits.

Aetna thereafter altered Fakete's duties in his position of audit consultant. Fakete also received a written warning ("Warning") from his superior, Thomas Larkin ("Larkin"), regarding unexplained absences from the workplace. The Warning listed objectives that Fakete had to meet and required him to use listed methods to achieve such objectives. Fakete, however, could not meet the objectives because Aetna terminated his e-mail capacity. On December 7, 1998, Aetna terminated Fakete for violations of the Warning and falsification of expense reports. In terminating him, Aetna did not follow the terms of the Warning which provided for probation for any subsequent violations.

At the time of his termination, Fakete was 56 years old. His pension would have vested in March, 1999. Under Aetna's new pension plan taking effect in January 1999, Fakete would have been eligible for early retirement at the age of 59. Fakete believes that his termination was effected pursuant to an unwritten "corporate challenge" to save $30 million by which Aetna terminated older employees nearing retirement to save on salary, pension, and health care benefits. Fakete filed a formal charge ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on June 18, 1999, and received a right to sue notice on December 20, 1999.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court can-

not credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

## III. DISCUSSION

The Second Amended Complaint states four counts. Count I alleges age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. Count II asserts retaliatory discharge under the ADEA and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. Ann. § 951. Counts III and IV allege intentional and willful discrimination under the ADEA and the PHRA.

Through three separate motions filed on February 23, 2001, Defendant seeks summary judgment on Counts I, III, and IV on their merits, Count II for failure to exhaust administrative remedies, and on Plaintiff's request for punitive damages. Plaintiff filed an untimely response only addressing Defendant's arguments with respect to the merits of Counts I, III, and IV, and the exhaustion of administrative remedies under the PHRA.[3] The Court,

however, will address all of Defendant's arguments, contested and uncontested, under the legal standard for summary judgment under Federal Rule of Civil Procedure 56(c). *See* Local R. Civ. P. 7.1(c) ("In the absence of a timely response, the motion may be granted as uncontested **except that a summary judgment motion, to which there has been no timely response, will be governed by Fed.R.Civ.P. 56(c).**") (emphasis added).

### A. Failure to Exhaust Administrative Remedies—PHRA

■■ Aetna first seeks summary judgment on Plaintiff's claims in Counts II, III, and IV under the PHRA for failure to exhaust administrative remedies. The PHRA prohibits discrimination in employment on the basis of age. 43 Pa. Cons. Stat. Ann. § 953. To bring suit under the PHRA, a plaintiff must first have filed a verified administrative complaint with the Pennsylvania Human Rights Commission ("PHRC") within 180 days of the alleged act of discrimination. 43 Pa. Cons.Stat. Ann. §§ 959(a), 962. If a plaintiff fails to timely file a complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA. *Woodson v.*

**3.** On March 27, 2001, Plaintiff's counsel forwarded to chambers a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, but failed to file this document with the Clerk of Court. Contrary to Plaintiff counsel's belief, Plaintiff's response to Defendant's Motions is untimely under the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure. Although the federal rules do not prescribe a response time for motions in civil cases, the local civil rules for the United States District Court for the Eastern District of Pennsylvania, effective July 1, 1995, provide:

Unless the parties have agreed upon a different schedule and such agreement is approved under Local Civil Rule 7.4 and is set forth in the motion, or unless the Court directs otherwise, any party opposing the

motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief.

Local R.Civ.P. 7.1(c). Three days is added to the fourteen day deadline pursuant to the Federal Rules of Civil Procedure in the event of service by mail. Fed.R.Civ.P. 6(e). Defendant's Motions were served on February 23, 2001, by United States mail. Accordingly under the applicable court rules, Plaintiff's response was due on or before March 12, 2001. Plaintiff did not seek, nor did the Court grant, an extension or alteration of the seventeen-day deadline. The Court, however, will exercise its discretion and consider Plaintiff's untimely response to avoid penalizing Plaintiff for his counsel's lack of diligence.

*Scott Paper Co.,* 109 F.3d 913, 924 (3d Cir.1997). The Pennsylvania courts have strictly interpreted this requirement. *Id.* The defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies. *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir.1997).

█ It is undisputed that Plaintiff did not file a separate complaint with the PHRC, nor did Plaintiff request that the EEOC dually file his Charge with the PHRC. (Def. Mot. for Summ. J. on Counts I, III, IV ("Summ. J. Mot.I") Ex. G; Pl. Mem. of Law in Opp'n to Def's Mot. for Summ. J. ("Pl.Resp.") at 24–25.) Plaintiff argues that these deficiencies are cured because the EEOC actually transmitted his complaint to the PHRC on July 21, 1999, pursuant to a worksharing agreement. As evidence that his complaint was transmitted, Plaintiff points to a letter addressed to Defendant's counsel from Peggy Raynock, the Assistant to the Director of Compliance for the PHRC, stating that the PHRC received a copy of Plaintiff's EEOC Charge on July 21, 1999. (Summ. J. Mot. I Ex. M.) The letter, however, also states that:

> [the] PHRC did not docket this case because of two reasons: (1) the complainant did not check the box on the EEOC form 5 requesting dual filing and (2) the standard request for dual filing was not attached. For these reasons, PHRC believed that Mr. Fakete did not wish his complaint filed with PHRC.

(*Id.*)

[4] The PHRC and EEOC have entered into an agreement through which they have apportioned initial jurisdiction over discrimination complaints. *Woodson,* 109 F.3d at 925. Under this agreement, each agency waives its right to initially review claims that are first filed with the other agency. *Id.* at 926. Contrary to Plaintiff's argument, the agreement between the EEOC and the PHRC is relevant only to the issue of whether a plaintiff has satisfied the administrative exhaustion requirements of the federal anti-discrimination statutes, and not the exhaustion requirements of the PHRA. *Id.* at 916. This worksharing agreement does not operate to automatically satisfy the PHRA's filing requirement. *Id.*

█ To exhaust the administrative remedies required by the PHRA, a plaintiff must not only file a verified complaint with the PHRC, but also must comply in good faith with the procedures provided for disposition of the complaint. *Larmore v. RCP/JAS, Inc.,* No. Civ.A.97–5330, 1998 WL 372647, at *3 (E.D.Pa. May 19, 1998); *Lukus v. Westinghouse Elec. Corp.,* 276 Pa.Super. 232, 419 A.2d 431, 454 (1980); *see also Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917, 919 (1989) (holding that PHRA administrative procedures are a mandatory rather than discretionary means of enforcement). Transmittal of an EEOC complaint to the PHRC may constitute a filing of a verified complaint with the PHRC. *Lukus,* 419 A.2d at 454. Absent good faith use of the PHRC procedures, however, mere transmittal is insufficient to constitute exhaustion of administrative remedies under the PHRA. *Lukus,* 419 A.2d at 454–55 ("[O]ur Legislature has not indicated that it considers federal proceedings on discrimination complaints the functional equivalent of proceedings before the PHRC.") Plaintiff submits no evidence contradicting Defendant's evidence that Plaintiff failed to comply with the PHRA's procedures for disposition of his complaint. The Court therefore concludes that Plaintiff has failed to exhaust his administrative remedies as required by the PHRA, and grants

judgment on Counts II, III, and IV on Plaintiff's claims under the PHRA.[4]

### B. Failure to Exhaust Administrative Remedies—Count II under ADEA

█ Count II alleges that Fakete's termination constituted retaliation by Aetna in violation of the ADEA, 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... made a charge ... under this chapter."). (Second Am. Compl. ¶ 39.) To establish a prima facie case of ADEA retaliation, a plaintiff must show: (1) that he engaged in protected conduct; (2) that he was subject to an adverse employment activity; and (3) that a causal link exists between the protected activity and the adverse action. *Barber v. CSX Distribution Services*, 68 F.3d 694, 701 (3d Cir.1995). The Second Amended Complaint alleges that after his termination, Plaintiff applied for temporary benefits from the Pennsylvania Department of Labor and revealed his complaints of age discrimination and wrongful termination. (Sec.Am.Compl. ¶ 25.) Using the results of an audit of his expense accounts, Aetna successfully contested his application for unemployment benefits. (Sec. Am. Compl. ¶ 26; Pl. Resp. Ex. E.) A referee denied Plaintiff's request for benefits on January 14, 1999. (Pl. Resp.Ex. E.) These facts presumably form the basis of Plaintiff's retaliation claim.

Aetna argues that Count II should be dismissed for failure to exhaust administrative remedies. Plaintiff failed to respond to this argument. Reviewing the record and taking all inferences in Plaintiff's favor, the Court agrees that Plaintiff

failed to exhaust his administrative remedies under the ADEA and thus grants judgment on Count II.

█ It is well-settled that as a condition precedent to filing suit under the ADEA, a plaintiff must first file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory act. *Galvis v. HGO Services*, 49 F.Supp.2d 445, 448 (E.D.Pa.1999) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020–1021 (3rd Cir.1997)); 29 U.S.C. § 626(d). Where a plaintiff fails to pursue an administrative claim before the EEOC, that claim is waived in a subsequent lawsuit. *See Hopson v. Dollar Bank*, 994 F.Supp. 332, 337–38 (W.D.Pa. 1997). After the denial of his unemployment benefits, Plaintiff filed an EEOC Charge Questionnaire on May, 6, 1999, and an EEOC Charge on June 18, 1999. Neither of these documents gave the EEOC or Defendant any notice of a claim for retaliation based on Aetna's opposition of his request for unemployment benefits. In his Charge Questionnaire, Plaintiff failed to mention any allegations about the unemployment hearing or specify any claim of retaliation. (Def. Mot. for Summ. J. on Count II ("Summ. J. Mot.II") Ex. G; Summ. J. Mot. II Ex. I.) Similarly, Plaintiff's Charge solely identified a claim for age discrimination in his termination, not retaliation. (Summ. J. Mot. II Ex. G.) Plaintiff's affidavit attached to his Charge only mentioned the unemployment benefits hearing in passing:

> The misconduct, I believe, refers to an E–Mail Respondent believes I sent to someone out of the network, in the Summer of 1998.... At my termination hearing, the investigator said that the E-

---

4. Having granted judgment on Plaintiff's PHRA claims on this basis, the Court declines to address Defendant's argument with respect

to the availability of punitive damages under the PHRA.

mail issue was a reason for my discharge. However, it was not mentioned at the unemployment hearing. ·

(*Id.*) Neither the Charge, Questionnaire or affidavit give any other details about the unemployment hearing, or even state that Aetna opposed Plaintiff's application for benefits. Clearly, neither Plaintiff's EEOC Charge nor any other document submitted to the EEOC gave facial notice of a retaliation claim or the basis therefor.

 The Court's inquiry, however, cannot rest on that point. Once a discrimination charge has been filed, the scope of a judicial complaint is not limited to the four corners of the administrative charge. *Love v. Pullman,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Hicks v. ABT Assoc.,* 572 F.2d 960, 963 (3d Cir. 1978) (internal quotations omitted); *Doe v. Kohn, Nast & Graf,* 866 F.Supp. 190, 195 (E.D.Pa.1994). The parameters of a subsequent private action in the courts is defined by the scope of the investigation which can reasonably be expected to grow out of the charge of discrimination. *Hicks,* 572 F.2d at 965. Under these circumstances, the legal analysis turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it. *Galvis,* 49 F.Supp.2d at 448–49.

The Court concludes that the retaliation claim is outside the scope of an investigation that can reasonably be expected to grow out of Plaintiff's Charge. The sole nexus between the facts supporting the age discrimination claim and the retaliation claim, namely the allegations of Plaintiff's misconduct, are not sufficiently close so as to reasonably expect the latter claim to arise from an investigation of the first. The retaliation claim is not an explanation of the original charge or a natural out-

growth of the original charge but involves a separate action taken by Aetna in the unemployment benefits hearing that was not described or clearly referenced in the Charge. The Court also notes that Plaintiff filed his Charge six months after denial of his unemployment benefits with the assistance of the attorney who represented him in the unemployment benefit hearing. Having reached the above conclusions, the Court grants judgment in favor of Defendant on Count II under the ADEA.

## C. Merits of Counts I, III and IV— ADEA

Defendant last argues that Plaintiff cannot establish a prima facie case of age discrimination, or, alternatively, that Plaintiff cannot establish that Defendant's justification for Plaintiff's termination is pretextual. Plaintiff's response is two-fold. First, Plaintiff claims to have direct evidence of age discrimination that obviates the necessity for proof of a prima facie case. Second, Plaintiff submits evidence that he believes establishes a prima facie case and casts doubt on Defendant's justification for the denial of his transfer and termination.

 Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1994). In this action, Plaintiff claims that Aetna discriminated against him on the basis of age by denying his request to transfer, and subsequently terminating his employment. When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610,

113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome. *Id.* An employment discrimination case under the ADEA may be advanced on either a pretext theory under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny, or a "mixed-motives" theory as outlined in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *See Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997).

### 1. *Mixed–Motive—Direct Evidence of Discrimination*

 In a "mixed-motives" or *Price Waterhouse* case, the employee must produce "direct evidence that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775; *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1096 n. 4 (3d Cir.1995). If the employee does produce direct evidence of discriminatory animus, the employer must then produce evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision. *Price Waterhouse,* 490 U.S. at 244–45, 109 S.Ct. 1775; *Starceski,* 54 F.3d at 1096 n. 4. In order to shift the burden, the plaintiff must produce evidence that "is so revealing of discriminatory animus that it is not necessary to rely upon any presumption from the prima facie case [as is necessary in a pretext action]." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 778 (3d Cir.1994). Direct evidence of discrimination involves "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting a discriminatory attitude." *See Starceski,* 54 F.3d at 1096 (citing *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring)). Stray remarks in the workplace, statements by nondecisionmakers, or even statements by decisionmakers unrelated to the decisional process itself, do not constitute direct evidence of discrimination. *See id.* Circumstantial evidence that directly reflects the alleged unlawful basis for the adverse employment decision may also be sufficient. *Walden v. Georgia–Pacific Corp.,* 126 F.3d 506, 513 (3d Cir.1997).

 Plaintiff claims to have direct evidence of age discrimination. First, Plaintiff testifies that Souza, Aetna's Vice President and Director of Internal Audit, told him that the audit department workers were career workers, and anyone with at least five years experience should update their marketing skills because they would be rotated into another division of the company. (Summ. J. Mot. I Ex. H ¶ 2; Pl. Resp. Ex. I at 86–87.) Souza did not single out Plaintiff, but instead addressed her remarks in a general meeting to the more experienced employees in the auditing department. (Pl. Resp. Ex. I at 88.) Second, Plaintiff cites a statement by Larkin, Aetna's IT Audit Operations Head and Plaintiff's supervisor, that Aetna's new management would not be favorable to Plaintiff because they were looking for "younger single people that will work unlimited hours." (Pl. Resp. Ex. I at 92.) Larkin made this statement during August of 1998, after the merger when he became Plaintiff's direct supervisor. (*Id.*) Last, Plaintiff reports a statement by Ron Weber, a manager in another division of Aetna, that he believed that Aetna would rotate out many senior employees. (*Id.* at 93–94.) Plaintiff believes that Weber felt that he was being targeted and just wanted to "survive another year until he could get

their earlier retirement package." (*Id.* at 94.) Additionally, Plaintiff relates receiving considerable publicity when he won a fitness challenge sponsored by Aetna because he was considerably older than the other competitors. (*Id.* at 99.) Plaintiff, however, did not find such attention to his age derogatory. (*Id.* at 96.)

This evidence does not constitute direct evidence of discrimination. Initially the Court notes that Souza's remark is not directly related to age, but instead refers to years of experience which is only tangentially connected to, and certainly not dispositive of, an employee's age. Furthermore, Souza was not speaking about terminating such employees, but instead referred to moving them into different divisions within Aetna. (*Id.* at 89.) Although one discriminatory action that Plaintiff cites is Souza's refusal to transfer him as requested to the IT department, Souza's remark, even when interpreted most favorably to Plaintiff, directly contradicts any age discrimination claim based on the refusal to transfer by asserting that more experienced employees would receive preferential treatment with respect to transfers. Larkin's statement does not constitute direct evidence of discrimination because it was a stray remark that did not directly reflect the decisionmaking process of any particular employment decision. *See Gorence v. Eagle Food Centers, Inc.,* 242 F.3d 759 (7th Cir.2001) (requiring managerial statements to be related to some particular employment decision in order to constitute direct evidence of discrimination); *Starceski,* 54 F.3d at 1096.

 Ron Weber was not involved in any decision relating to Plaintiff's termination, nor does his remark involve the decisional process of Plaintiff's termination. *See Starceski,* 54 F.3d at 1096 (statements by decisionmakers unrelated to the decisional process itself do not con-

stitute direct evidence of discrimination). Additionally, Plaintiff's testimony just reflects "the sense" that he got from speaking with Weber, and thus is conjecture. *See Hein v. All Am. Plywood Co. Inc.,* 232 F.3d 482, 488–89 (6th Cir.2000) ("[D]irect evidence [of discrimination] cannot be based on rumors, conclusory allegations, or subjective beliefs.... Nor can it be based on vague, ambiguous, or isolated remarks."). Similarly, the publicity of his age in relation to the fitness challenge is completely unrelated to any employment decision regarding Plaintiff.

Having determined that Plaintiff lacks direct evidence of discrimination, the Court will proceed to analyze the case under a *McDonnell Douglas* pretext theory.

### 2. *Pretext Theory Circumstantial Evidence of Discrimination*

 In cases alleging age discrimination under the ADEA and the PHRA in which the plaintiff lacks direct evidence of age discrimination, courts apply a burden-shifting framework, similar to that applicable to cases under Title VII of the Civil Rights Act of 1964. *Showalter v. Univ. of Pittsburgh Medical Ctr.,* 190 F.3d 231, 234 (3d Cir.1999). First, the plaintiff must produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case. *Id.* If the plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge. *Id.* at 235 (citations omitted). Should the defendant fail to satisfy this burden, judgment should be entered for the plaintiff. *Id.* (citations omitted). If the defendant satisfies this burden, then the burden of production shifts back to the plaintiff to proffer evidence "from which a factfinder could rea-

sonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quoting *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994)).

■ To establish a prima facie case under the traditional analysis for ADEA discrimination, a plaintiff must allege that he (1) is 40 years of age or older; (2) was discharged; (3) was qualified for the job; and (4) was replaced by a sufficiently younger person to create an inference of age discrimination. *Showalter,* 190 F.3d 231, 234–35 (3d Cir.1999). Aetna concedes that Plaintiff has sufficient evidence to establish the first and third elements of a prima facie case, but argues that Plaintiff is unable to establish the second and fourth elements.

■ For satisfaction of the fourth element, courts generally require proof that the plaintiff was replaced by a person who is younger than he by at least seven years. *Bernard v. Bethenergy Mines, Inc.,* 837 F.Supp. 714, 717 (W.D.Pa.1993), *aff'd* 31 F.3d 1170 (3d Cir.1994) (listing cases); *Gutknecht v. SmithKline Beecham Clinical Laboratories,* 950 F.Supp. 667, 672 (E.D.Pa.1996) ("Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the replacement is not considered "sufficiently younger," and thus no prima facie case is made."). Aetna submits evidence that Aetna has replaced Plaintiff with a man who is only three years younger than Plaintiff. (Summ. J. Mot. I Ex. B ¶ 28; Summ. J. Mot. I Ex. H ¶ 18.) After terminating Plaintiff on December 7, 1998, Larkin, Aetna's IT Audit Operations Head and Plaintiff's supervisor, began searching for a replacement in early 1999. (Summ. J. Mot. I Ex. B ¶¶ 25, 28.) On August 2, 1999, Larkin hired Harvey Slegel ("Slegel")˙as an audit consultant when Slegel was 53 years old, only three years younger than Plaintiff at the time of his termination. (*Id.* ¶ 28.) Slegel has assumed the majority or all of Plaintiff's former responsibilities. (Summ. J. Mot. I Ex. B ¶ 28; Summ. J. Mot. I Ex. H ¶ 18.)

■ Plaintiff claims that a material dispute of fact exists as to whether Slegel was in fact his replacement and that his replacement was in fact Cathy Beech ("Beech"), aged 34, who was hired two months before Plaintiff was terminated. To establish this assertion, Plaintiff submits an unlabeled portion of his answers to Interrogatories in which counsel avers that Beech was hired in October 1998. (Pl. Resp.Ex. H.) In further support, Plaintiff argues that before Beech was hired, the audit department at Aetna's office in Blue Bell, Pennsylvania, only had two auditors, and afterwards there were four until Plaintiff was terminated;[5] and that Aetna had instituted a 'hiring freeze' at the time that Beech was hired, permitting new hires only in unusual circumstances. (Pl. Resp. Ex. A ¶ 10.) Plaintiff also points out that Slegel was not hired until eight months after he was terminated.

---

5. Plaintiff submits no admissible evidence in support of this statement. Instead, Plaintiff provides an unnamed, unidentified chart with various names, start dates, dates of birth, and job titles that includes Cathy Beech. (Pl. Resp.Ex. L.) The source of the chart is not identified nor is the chart self-authenticating.

*See Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1234 n. 9 (3d Cir.1993) (noting that evidence introduced to defeat a motion for summary judgment must be capable of being admissible at trial).

■ The Court concludes that these assertions are insufficient to create a genuine dispute of material fact as to whether Slegel replaced Plaintiff. Plaintiff produces no admissible evidence that Beech was even hired, what her age was, whether she assumed Plaintiff's duties, or that no unusual circumstances existed that would justify her being hired. (*See* Pl. Resp. Ex. H; Pl. Resp. Ex. L.) The only inference that could rationally be derived from admissible evidence is that Slegel was not hired until eight months after Plaintiff was terminated and after Plaintiff filed a claim for age discrimination with the EEOC. That alone is insufficient to create a genuine dispute of fact that Slegel was not Plaintiff's replacement.

■ In the alternative, Plaintiff contends that he need not prove replacement by a younger worker since his termination was part of a reduction in force. A reduction in force occurs when an employer permanently eliminates certain positions from its workforce. *Michas v. Health Cost Controls of Il., Inc.,* 209 F.3d 687, 693 (7th Cir.2000). In cases in which the plaintiff alleges that the employer engaged in discriminatory firing on the basis of age as part of a general reduction in workforce, the plaintiff need not allege that he was replaced by a younger worker. *Torre v. Casio, Inc.,* 42 F.3d 825, 831 (3d Cir.1994). Rather, the plaintiff must allege that the employee retained other similarly-situated but sufficiently younger workers. *Showalter,* 190 F.3d at 235.

■ The Court rejects Plaintiff's argument. Plaintiff presents no evidence that a reduction-in-force occurred, that his position was eliminated, or that any younger similarly-situated workers were retained. Plaintiff submits an affidavit of Dan Lubas, Aetna's Vice President of Operations and Finance for the Worker's Compensation Division, stating that Aetna was keeping and promoting younger employees and actively hiring new people for its Information Systems Division, while terminating older, salaried employees. (Pl. Resp. Ex. C ¶¶ 8, 10.) Lubas' statement does not create a genuine issue of material fact that a reduction-in-force occurred because it does not state that Aetna was eliminating positions from the workforce. It is also insufficient to establish a genuine issue of material fact as to retention of younger workers since the affidavit does not aver the age of the employees being kept, sought, or promoted, or whether such employees are similarly-situated to Plaintiff.

■ Having determined that Plaintiff is unable to establish an essential element of a prima facie case of age discrimination with respect to his termination, the Court next addresses the Plaintiff's ability to establish a prima facie case with respect to the denial of his transfer request. To establish a prima facie case with respect to the refusal to transfer, the plaintiff must show the following four elements: (1) that he is over forty years old, (2) that he was qualified for his position, and (3) that he suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *Danas v. Chapman Ford Sales, Inc.,* 120 F.Supp.2d 478, 484 (E.D.Pa.2000); 29 U.S.C. § 931(a) (1994). Denial of a request to transfer is an adverse employment action actionable under the ADEA. *See Jackson v. Dana Corp.,* 1999 WL 1018241, at *7 (E.D.Pa. Nov.9, 1999). To satisfy the fourth element, the plaintiff must present "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *Danas,* 120 F.Supp.2d at 486 (citing *O'Connor v. Consolidated Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52

L.Ed.2d 396 (1977))). In the age discrimination context, that inference can be drawn from the fact that the adverse employment action was taken to the detriment of a member of the protected class and to the benefit of another, significantly younger worker. *Id.* (citing *O'Connor,* 517 U.S. at 313, 116 S.Ct. 1307).

█ Plaintiff adduces no evidence from which a reasonable jury could preliminarily infer that his age was a motivating factor in Defendant's denial of his transfer request. Plaintiff submits evidence that shortly after a meeting held on June 10, 1998, he sought a transfer to the IT department that his supervisor, Souza, denied. (Pl. Resp. Ex. D ¶¶ 10, 13; Pl. Resp. Ex. A ¶ 7–11.) Instead of granting a transfer, Souza gave him a raise to keep him in her department since he was the most experienced audit consultant in the field of disaster recovery planning. (Pl. Resp. Ex. A ¶ 9; Pl. Resp. Ex. D ¶ 12–13.) Later in the fall of 1998, Souza lacked authority to transfer Plaintiff because Aetna implemented a hiring freeze. (Pl. Resp. Ex. A ¶ 10¢—11.) While Plaintiff presents evidence supporting his argument that no such hiring freeze existed, in the absence of evidence that sufficiently younger employees who were similarly situated to Plaintiff were being transferred, such evidence does not permit any rational inference that the reason for Souza's denial was his age.[6]

Having reached the above conclusions, the Court determines that Plaintiff fails to present a prima facie case of age discrimination. The Court, therefore, need not reach Defendant's arguments with respect to pretext.

## IV. CONCLUSION

In summary, the Court grants Defendant's Motions for Summary Judgment on Counts I, II, III, and IV. Having disposed of Plaintiff's substantive Counts, the Court dismisses Defendant's Motion for Summary Judgment on Plaintiff's Request for Punitive Damages as moot.

---

**6.** Plaintiff's testimony of Souza's statements that the audit department workers with a minimum of five years experience would be rotated into another division of the company provides no support for his prima facie case by implying that older workers would be more likely to be transferred to another department. (Summ. J. Mot. I Ex. H ¶ 2; Pl. Resp. Ex. I at 86–87.)